John J. **GALGAY**, as Trustee in the Reorganization of R. Hoe & Co., Inc.,
Plaintiff-Appellant,

v.

**BULLETIN COMPANY, INC.,**
Defendant-Appellee.

No. 19, Docket 74–1582.

United States Court of Appeals,
Second Circuit.

Argued Sept. 16, 1974.

Decided Oct. 16, 1974.

Gary G. Cooper, New York City (Winthrop, Stimson, Putnam & Roberts, A. Edward Grashof, New York City, of counsel), for plaintiff-appellant.

Joseph A. Torregrossa, Philadelphia, Pa. (Morgan, Lewis & Bockius, John R. McConnell, Philadelphia, Pa., Bleakley, Platt, Schmidt & Fritz, Frank A. Fritz, Jeffrey S. Cook, New York City, of counsel), for defendant-appellee.

Before MOORE, MULLIGAN and ADAMS,* Circuit Judges.

MULLIGAN, Circuit Judge:

This is an appeal by the plaintiff trustee of a bankrupt company, R. Hoe & Co., Inc. (Hoe), from a judgment entered on March 1, 1974 in the United States District Court for the Southern District of New York, Hon. Lawrence W. Pierce, Judge, granting the motion of the defendant Bulletin Company, Inc. (Bulletin) to dismiss the complaint on the ground that the court lacked in personam jurisdiction over the defendant. Judge Pierce filed a memorandum opinion on February 26, 1974 in which he concluded that Bulletin had not engaged

* Of the Third Circuit Court of Appeals, sitting by designation.

in any purposeful activity in New York and therefore had not transacted business in New York within the meaning of N.Y.C.P.L.R. § 302(a)(1) (McKinney 1972). Judgment affirmed.

## I. THE FACTS

Bulletin is a Pennsylvania corporation which publishes the Evening and Sunday Bulletin newspapers in Philadelphia. Hoe is a manufacturer of machinery with its factory located in the Bronx, New York. In 1966, the parties entered into negotiations by telephone and in about a dozen personal meetings, all of which were conducted at the Bulletin office in Philadelphia, for the sale by Hoe and the purchase by Bulletin of certain machinery, which would be manufactured in New York and then shipped to Philadelphia and installed and assembled under Hoe's supervision in the Bulletin office. The negotiations culminated in a proposal prepared and signed by Hoe in New York, and signed as accepted by Bulletin in Philadelphia on December 15, 1966. Thereafter, Hoe forwarded an unsigned formal contract to Bulletin, which executed the document in Philadelphia and returned it to New York; there it was signed by Hoe on February 2, 1967. Bulletin paid $1,155,813.00 to Hoe but then claimed the machinery was defective, and so has refused to pay the balance of $22,566.10. This prompted the diversity action below to recover damages for breach of contract. Plaintiff is the trustee in reorganization of Hoe, the debtor in bankruptcy proceedings in the Southern District of New York under Chapter X of the Bankruptcy Act.

## II. THE LAW

No claim is made here that the Bulletin is a foreign corporation "doing business" in New York under traditional tests of "fair measure of permanence and continuity," Tauza v. Susquehanna Coal Co., 220 N.Y. 259, 267, 115 N.E. 915, 917 (1917). Rather, jurisdiction is sought under the broader provisions of N.Y.C.P.L.R. § 302(a)(1), which permits personal jurisdiction over a nondomiciliary who, in person or through an agent, "transacts any business within the state." Service of process was made in Philadelphia by a United States deputy marshal pursuant to Rule 4(e), Fed.R.Civ.P.

In Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., 15 N.Y. 2d 443, 457 & n. 5, 261 N.Y.S.2d 8, 18, 209 N.E.2d 68, 75 (1965), cert. denied, Estwing Manufacturing Co. v. Singer, 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1966), the New York Court of Appeals clearly indicated that the inquiry to be made in a section 302 case is whether, looking at "the totality of the defendant's activities within the forum," purposeful acts have been performed in New York by the foreign corporation in relation to the contract, "albeit preliminary or subsequent to its execution." While there may be little or no argument with this statement of the rule, each case arising under the statute requires a consideration of each of the defendant's activities within and without the state, bearing in mind that "although it is their aggregate which will decide the issue of jurisdiction, some activities are more important than others and, therefore, separate evaluation aids analysis." McLaughlin, Practice Commentaries 7B C.P.L.R. § 302 (McKinney 1972), at 74.

The activities relied upon by the appellant are as follows:

1) Appellant urges that while Bulletin was never present in New York itself, the contract required it to retain an agent to transport the machinery from the Hoe factory in the Bronx to its offices in Philadelphia. Bulletin did engage George R. Hall of Cleveland, Ohio to haul the machinery, and he in turn retained D. F. Bast, Inc., an independent contractor to perform the job. We cannot agree with Bulletin that the actions of Bast in New York cannot be attributed to Bulletin because Bast was an "independent contractor" as distinguished from an agent or employee. It is clear that under the terms of the agreement,

Bulletin undertook responsibility for hauling the machinery from the Hoe plant. The legal relationships *inter sese* Bulletin-Bast and between them and third parties may well depend upon whether Bast was an agent or an independent contractor. However, that is not in issue before us. No matter how its relationship to Bulletin be described, Bast was in New York at the request and for the business purposes of Bulletin and therefore its activities must be attributed to Bulletin. While the New York law on this point is not crystal clear, it would appear that a formal agency relationship is not necessary to impute activity against the defendant where he is being sued by a third party, Elman v. Belson, 32 A.D.2d 422, 302 N. Y.S.2d 961 (2d Dep't 1969); Legros v. Irving, 77 Misc.2d 497, 354 N.Y.S.2d 47 (Sup.Ct. N.Y. County 1973).[1]

■ However, assuming that Bast's presence was the presence of Bulletin, it does not follow that this rises to the level of meaningful or purposeful activity. Hoe had done all the work on the machinery in New York and Hoe was later to assemble the equipment in Philadelphia. Bulletin's only activity was the cartage of the product from New York pursuant to the terms of the contract drafted by Hoe. The business enterprise was the manufacture, sale, and installation of the equipment; that activity was in essence performed by the New York company. The transportation from New York, while a necessary link,

was, in our view, of minor or accidental importance.

■ 2) The appellant also relies on the fact that the contract was executed in New York. The court below, assuming for the purposes of the motion that the contract was in fact executed in New York, did not consider this factor determinative. We agree. As far as purposeful activity is concerned, it is much more meaningful that Hoe's representatives came to Philadelphia to negotiate the contract on numerous occasions. Liquid Carriers Corp. v. American Marine Corp., 375 F.2d 951, 955–956 (2d Cir. 1967). The fact that the formal contract was sent unsigned to Philadelphia, so that the last signature was affixed in New York, is a purely fortuitous circumstance. Technically, in conflicts cases this would make New York the place of contract execution.[2] However, if we are to determine if this constitutes a purposeful business activity in New York, it must be noted that here the execution in New York was performed by Hoe and not Bulletin; therefore, it cannot be said that the *defendant* transacted business in New York. Green & White Construction Co. v. Columbus Asphalt Corp., 293 F.Supp. 279, 280 (S.D.N.Y.1968); Standard Wine & Liquor Co. v. Bombay Spirits Co., 20 N. Y.2d 13, 17, 281 N.Y.S.2d 299, 301, 228 N.E.2d 367, 369 (1967); *McLaughlin, supra*, at 78. Even in American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp., 439 F.2d 428 (2d Cir. 1971), where the court sustained juris-

---

1. Where the action is by the agent or independent contractor against the non-resident principal, the rule is apparently contra, i. e. the New York activities of the agent will not be attributed to the non-domiciliary principal. Haar v. Armendaris Corp., 31 N.Y.2d 1040, 342 N.Y.S.2d 70, 294 N.E.2d 855 (1973). The dichotomy is noted by Dean McLaughlin in his Practice Commentary, *supra*, 1973–1974 Supp. at 10. Conceptually, it would not seem to be a supportable distinction and this is so noted by Dean McLaughlin.

2. But even in a conflicts case, the mere fact that the contract was executed in New York

would not be enough per se to make New York law controlling. See Auten v. Auten, 308 N.Y. 155, 124 N.E.2d 99 (1954).

The distinction between determining the place of a tort for conflicts purposes, and determining the locus for purposes of interpreting a jurisdictional statute like 302, was drawn in *Longines, supra*, 15 N.Y.2d at 463, 261 N.Y.S.2d 8, 209 N.E.2d 68, and earlier in Hanson v. Denckla, 357 U.S. 235, 253–254, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). See part 4 of this opinion, *infra*. Similarly, there is a distinction between a contract's place of execution and the location of the jurisdictional forum.

diction in a case in which the *defendants* physically executed the contract in New York, Judge Feinberg took pains to point out that "[t]he level of activity in New York by these defendants far exceeded the bare execution of employment contracts in New York," Id. at 432.

Therefore, we conclude that the contract-execution point also is of no avail to appellant.

■ 3) Appellant further urges that since the shipment was f. o. b. New York and the risk of loss of the machinery was on Bulletin while the goods were in transit, there was a "purposeful activity" in the state. Judge Pierce found this element "of little consequence since it was the seller plaintiff, a New York domiciliary, who chose the f. o. b. point." Appellant relies principally upon the prior holding of this court in Agrashell, Inc. v. Bernard Sirotta Co., 344 F.2d 583, 588–589 (2d Cir. 1965), that an f. o. b. New York sale placing the risk of loss on the out-of-state buyer provides a reasonably clear-cut basis for amenability to suit in New York. While appellee correctly observes that the f. o. b. shipments in *Agrashell* involved ten truckloads over an 18-month period, as distinguished from what appears to be a single shipment here of machinery in one transaction, there are other significant distinctions. In *Agrashell*, Judge Waterman was careful to note at the outset of his discussion of the problem:

> . . . in the absence of authoritative pronouncements by the New York courts indicating a narrower legislative intention, we shall assume that Section 302 is as broad as the Federal Constitution would permit it to be.

Id. at 587. However, shortly after the *Agrashell* decision, Judge Fuld's opinion in *Longines, supra*, made it quite clear that CPLR § 302 does not confer the full complement of personal jurisdiction constitutionally permitted. Accord, A. Millner Co. v. Noudar, Lda., 24 A.D.2d 326, 329, 266 N.Y.S.2d 289, 293 (1st Dep't 1966).

It is also instructive that a later New York case has expressly decided that the shipping of goods to an out-of-state defendant by a New York plaintiff via common carrier f. o. b. New York was not enough to confer 302(a)(1) jurisdiction. M. Katz & Son Billiard Products, Inc. v. G. Correale & Sons, Inc., 26 A.D.2d 52, 270 N.Y.S.2d 672 (1st Dep't 1966), aff'd, 20 N.Y.2d 903, 285 N.Y.S. 2d 871, 232 N.E.2d 864 (1967). That case was relied upon on similar facts by Judge Pollack in Total Sound, Inc. v. Universal Record Distributing Corp., 286 F.Supp. 123 (S.D.N.Y.1968).

■ We conclude that in light of subsequent New York case law the f. o. b. point of shipment position espoused in *Agrashell* is not binding upon us. We must be guided in the construction of the New York jurisdictional statute by the interpretations of the New York courts. *American Eutectic Welding, supra*, 439 F.2d at 431–432.

■ 4) Appellant's final contention is without merit. The agreement here provided that the contract was to be governed and interpreted in accordance with New York law, and appellant argues that this provision makes the defendant amenable to suit in New York. It is well established that this choice-of-law provision does not have jurisdictional implications. This was specifically held in *Agrashell, supra*, 344 F.2d at 588. See McLaughlin, *supra*, at 82–83. Appellant's reliance upon National Equipment Rental, Ltd. v. Szukhent, 375 U.S. 311, 315–316, 84 S.Ct. 411, 11 L. Ed.2d 354 (1964) is misplaced. Although the provision of the contract there involved did contain a choice-of-law clause, it further designated a New York resident as an agent for the service of process.

We see no merit in appellant's other contentions. We conclude in assessing the totality of Bulletin's activities within the forum that there is no sufficient basis to find that purposeful conduct occurred within the statute and the cases construing it. Bulletin is a foreign cor-

poration with no property, officers, or offices in New York. Its only contact here was the fleeting presence of the trucking subcontractor which was ancillary and peripheral to the business which was transacted.

Affirmed.