**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,**

v.

**INTERBANCA–BANCA PER FINANZI-AMENTI A MEDIO TERMINE, S.P.A., Defendant.**

**No. 74 Civ. 4802.**

United States District Court,
S. D. New York.
Dec. 10, 1975.

Hughes, Hubbard & Reed, New York City, for plaintiff; Powell Pierpoint, Robert S. Anderson, New York City, of counsel.

Olwine, Connelly, Chase, O'Donnell & Weyher, New York City, for defendant; John Logan O'Donnell, Judith S. Kaye, Stephen Schlessinger, New York City, of counsel.

BONSAL, District Judge.

Plaintiff, the Federal Deposit Insurance Corporation ("FDIC"), as receiver for the Franklin National Bank ("FNB"),[1] commenced this action on October 31, 1974 alleging that on October 10, 1972 and October 24, 1972, FNB deposited $5,000,000 and $10,000,000, respectively, with defendant, Interbanca–Banca Per Finanziamenti A Medio Termine, S.p.A. ("Interbanca"), an Italian joint stock company engaged in banking with its headquarters and principal place of business in Milan, Italy. FDIC alleges that the deposits, together with accrued interest, became due and payable by Interbanca on October 10, 1974 and October 24, 1974, that demand on Interbanca was timely made by FNB and subsequently by FDIC, and that such demand was refused.

Alleging that Interbanca is an Italian banking corporation having no place of business in New York, FDIC moved for an order of attachment pursuant to Article 62 of the New York Civil Practice Law and Rules ("CPLR") (N.Y. CPLR § 6201 *et seq.* (McKinney 1963)). This Court signed an order of attachment "For Jurisdictional Purposes only" on October 31, 1974, and funds of Interbanca in the amount of $137,538.61 were attached by FDIC.

On December 16, 1974 Interbanca moved for an order dismissing the action on the ground that this Court lacked jurisdiction. By Memorandum filed March 25, 1975, this Court deferred determination of the motion pending further discovery with respect to which Interbanca was "deemed to be appearing specially for jurisdictional purposes only." Following discovery, Interbanca renewed its motion and in addition moved for an order staying the proceedings in this case pending the outcome of an ac-

---

1. On October 8, 1974, pursuant to 12 U.S.C. §§ 191 and 1821(c), FDIC was appointed receiver of FNB by the Comptroller of the Currency of the United States.

tion brought by FDIC against Interbanca in Milan, Italy on May 19, 1975.

### Motion to Dismiss

■ Interbanca's motion raises the issue of whether this Court has personal jurisdiction over Interbanca, or quasi-in-rem jurisdiction limited to the funds attached, or no jurisdiction on the ground of the asserted unconstitutionality of the New York attachment statute.

Following the order of attachment, FDIC served Interbanca with copies of the summons and complaint in Italy pursuant to CPLR §§ 313 and 314, which meets the requirements of the New York long-arm statute (CPLR § 302) and is sufficient to confer personal jurisdiction if it is established that Interbanca "transacted" business in New York in connection with the original placements of the deposits.

Discovery indicates that Interbanca made dollar loans, deposits and acceptances in New York beginning in 1971, through two New York banks, Manufacturers Hanover Trust Company ("Manufacturers") and Irving Trust Company ("Irving"), with which it maintained accounts and which have acted as its New York correspondent banks. This activity arose in connection with Interbanca's ventures into international financing.

Moreover, while it appears that the October 1972 deposits were originally proposed to Interbanca and FNB in Italy by Carlo Bordoni, a member of the Board of Directors of FNB's parent corporation, Franklin New York Corporation, final approval thereafter was made by senior officers of FNB in New York. It also appears that FNB transferred the $15,000,000 to Manufacturers, the bank designated by Interbanca to receive the deposits in New York.

On the basis of the facts elicited in discovery, the Court finds that Interbanca engaged in sufficient purposeful activity in New York to constitute the transaction of business within the meaning of N.Y. CPLR § 302(a)(1),[2] and holds that Interbanca is subject to personal jurisdiction because the claims here involved arise out of the transaction of business by Interbanca in New York. *Sterling National Bank & Trust Co. of New York v. Fidelity Mortgage Investors*, 510 F.2d 870 (2d Cir. 1975).

In *Sterling*, a representative of the Sterling National Bank & Trust Company of New York ("Sterling") telephoned the Financial Vice President of Fidelity Mortgage Investors ("Fidelity") in Florida about the possibility of Fidelity opening a line of credit at Sterling. Fidelity was an unincorporated business trust organized under the laws of Massachusetts and having no place of business in New York. Fidelity later established a line of credit with Sterling, opened an account at Sterling, borrowed funds on the line of credit, and transferred these funds to another bank in New York. No official meeting was held in New York concerning these credit arrangements, but a Fidelity representative did visit Sterling officials in New York on unrelated business.

On the basis of these facts, the Court of Appeals for the Second Circuit held that Fidelity had engaged in sufficient purposeful activity in New York to constitute the transaction of business within the meaning of Section 302(a)(1) and thus was subject to personal jurisdiction. *Sterling National Bank, supra* at 874.

Similarly, this Court finds that Interbanca transacted business in New York. The funds made available by FNB to Interbanca were transferred by FNB in New York to Manufacturers at Inter-

---

**2.** New York's long-arm statute, N.Y. CPLR § 302(a)(1) (McKinney 1972), provides in relevant part:

"*(a) Acts which are the basis of jurisdiction.* As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary, . . . who in person or through an agent:

1. transacts any business within the state; . . ."

banca's instructions. Then, in April 1973, October 1973, and April 1974, Interbanca instructed Manufacturers to pay FNB the interest which had accrued on the deposits for the preceding six months. It was also at this time that Interbanca requested FNB to renew the deposits for additional six-month terms. Furthermore, on February 7, 1974, Gino Uglietti, the General Manager of Interbanca, and Aldo Clemente, the Manager of Interbanca's Foreign Department, visited Michele Sindona, a member of the Board of Directors of Franklin New York Corporation, at the offices of FNB in New York, to discuss the possibility of Interbanca raising additional funds.

These facts indicate that the transaction in its entirety had close connections with New York, that Interbanca was fully aware of these contacts, and that Interbanca was instrumental in creating them. As the Court of Appeals held in *Sterling National Bank, supra*:

> The proper inquiry in a case such as this is "whether looking at 'the totality of the defendant's activities within the forum', purposeful acts have been performed in New York by the foreign corporation in relation to the contract, 'albeit preliminary or subsequent to its execution.'" Galgay v. Bulletin *Company, Inc.*, 504 F.2d 1062, 1064 (2d Cir. 1974), *quoting Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 457 & n.5, 261 N.Y.S.2d 8, 18, 209 N.E.2d 68, 75 (1965), cert. denied sub nom. *Estwing Manufacturing Co., Inc. v. Singer*, 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed. 2d 158 (1965). *Sterling National Bank, supra* at 873.

Accordingly, the Court finds that Interbanca is subject to personal jurisdiction under the New York long-arm statute.

■ The Court's determination as to personal jurisdiction eliminates the need for any extensive discussion of the New York attachment statute, N.Y. CPLR § 6201 *et seq.*, as it pertains to the facts here. The Court notes, however, that *ex parte* attachments are constitutional when "necessary to secure jurisdiction." *Fuentes v. Shevin*, 407 U.S. 67, 91 & n.23, 92 S.Ct. 1983, 32 L.Ed.2d 556, *reh. denied* 409 U.S. 902, 93 S.Ct. 177, 34 L.Ed.2d 165 (1972); *see also Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); *Sugar (Wrestling Revue, Inc.) v. Curtis Circulation Co.*, 383 F.Supp. 643 (S.D. N.Y.1974). Since the attachment was for jurisdictional purposes only, the *ex parte* attachment here was constitutional.

### Request for a Stay

■ Interbanca seeks a stay of this action pending the outcome of the Italian lawsuit initiated by FDIC against Interbanca on May 19, 1975 on the grounds that the Italian action can proceed more quickly; that the legal issues in both actions involve questions of Italian law which can be better interpreted by an Italian tribunal; and that the location of the Italian lawsuit is more convenient to the parties and witnesses.

On the other hand, FDIC has the statutory authority to sue in federal court, and the statutory duty to preserve and liquidate assets of a closed insured bank acquired by it pursuant to law. 12 U.S. C. §§ 1819 and 1823(e) (1969); *D'Oench, Duhme & Co. v. F.D.I.C.*, 315 U.S. 447, 65 S.Ct. 676, 86 L.Ed. 956 (1942). Since FDIC is seeking to enforce its statutory duties in both of these actions, Interbanca's request for a stay is denied.

It is so ordered.