CREDIT ALLIANCE
CORPORATION, Plaintiff,

v.

L.M. COTTRELL CONSTRUCTION
COMPANY, INCORPORATED,
Defendant.

No. 87 Civ. 4035 (RWS).

United States District Court,
S.D. New York.

Nov. 18, 1987.

## OPINION

SWEET, District Judge.

Defendant L.M. Cottrell Construction Company ("Cottrell") has moved for an order dismissing the complaint under Fed.R. Civ.P. 12(b)(2) and 12(b)(5) for lack of personal jurisdiction and insufficiency of service of process or, in the alternative, for an order pursuant to 28 U.S.C. § 1404(a) transferring this action to the Southern District of West Virginia. Upon the following facts and conclusions, the motion to transfer is granted.

**Facts**

Plaintiff Credit Alliance Corporation ("CAC"), a New York corporation, commenced this action to recover a deficiency of $22,915.38 allegedly due under a Negotiable Promissory Note ("Note") and Security Agreement ("Security Agreement") that were executed by Cottrell on September 26, 1985 in favor of Cecil I. Walker Machinery Co. ("Walker") and later assigned to CAC on October 3, 1985. The Note and Security Agreement were executed in connection with Cottrell's purchase of certain pieces of heavy machinery from Walker. Some time after the two principal agreements were signed, Cottrell signed a Delivery/Installation Certificate ("Delivery Certificate"). That document is not dated.

The Delivery Certificate is in the form of a notice to CAC acknowledging, *inter alia,* complete and satisfactory delivery of the machinery purchased from Walker. Although the Delivery Certificate provides for signature by Walker, identified in the document as the Secured Party, it does not appear that Walker ever signed the Delivery Certificate. CAC is the addressee of the Delivery Certificate, but there is no provision for its acceptance by signature of the document, even though the document contains various representations and undertakings by Cottrell and Walker apparently as an inducement to CAC to purchase the Note and Security Agreement from Walker. Among the undertakings agreed to by Cottrell are consent to venue and jurisdiction in New York for matters arising under the Note and Security Agreement and the appointment of C–A Credit Corp. in New

York ("C–A Credit") as its agent for service of process.

CAC contends that Cottrell defaulted under the Note by failing to make a payment due June 26, 1986. Shortly thereafter, CAC repossessed the machinery and sold it at a public sale on January 1, 1987. CAC, a New York corporation, commenced this action on June 11, 1987 by serving a summons and complaint on Jack Levine, an officer of C–A Credit, whom, CAC contends, is Cottrell's designated agent for service of process pursuant to the Delivery Certificate.

**The Forum Selection Clause**

The issue presented here is whether the clause in the Delivery Certificate selecting New York as a forum and appointing C–A Credit as agent for service of process is valid and enforceable. Both Walker and Cottrell are West Virginia companies and the purchase of machinery was entered into in West Virginia. Cottrell does not have any offices or plants in New York, nor does it have a business address or telephone in New York. During the past three years, Cottrell has not made any sales to persons in New York, nor has any officer, director or employee of Cottrell travelled to New York for any business purpose. Thus, personal jurisdiction over Cottrell turns on the enforceability of the clause consenting to jurisdiction and appointing an agent for service of process in New York.

Cottrell contends that the Delivery Certificate cannot support CAC's attempt to obtain jurisdiction for this commercial paper dispute in New York. The document, Cottrell argues, is not binding, since no evidence has been presented of its acceptance, execution or delivery by CAC. In an affidavit in support of Cottrell's motion, Cottrell's president states that he never received a copy of the Delivery Certificate signed by Walker, the other party to the document, or anyone else to whom Walker may have assigned the Note and Security Agreement. Finally, Cottrell notes that the Delivery Certificate does not purport to be an agreement for choice of venue or appointment of an agent for service of process, but rather appears to be, as its title suggests, an acceptance of delivered equipment.

The Delivery Certificate provides in pertinent part:

> We [Cottrell and Walker] agree to the venue and jurisdiction of any court in the State and County of New York regarding any matter arising under the [Note and Security Agreement]. We designate and appoint ... C–A Credit Corp., New York, New York ... as our true and lawful attorney-in-fact and agent for us and in our name, place and stead to accept service of any process within the State of New York ...

CAC opposes Cottrell's motion on the grounds that Cottrell voluntarily executed the Delivery Certificate by which it expressly selected New York as a forum and consented to jurisdiction in New York. CAC relies on a long line of cases upholding forum selection and appointment clauses.

In *National Equipment Rental, Ltd. v. Szukhent*, 375 U.S. 311, 315, 84 S.Ct. 411, 414, 11 L.Ed.2d 354 (1964), the Supreme Court held that "a party to a private contract may appoint an agent to receive service of process within the meaning of Federal Rule of Civil Procedure 4(d)(1), [even] where the agent is not personally known to the party ...." The Court relied in part on the well-settled rule that "parties to a contract may agree in advance to submit to the jurisdiction of a given court, to permit notice to be served by the opposing party, or even to waive notice altogether." *Id.* at 316, 84 S.Ct. at 414. Eight years later, the Court held that forum selection clauses are valid and enforceable unless it can be shown that enforcement "would be unreasonable and unjust, or that the clause is invalid for such reasons as fraud or overreaching." *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 92 S.Ct. 1907, 1916, 32 L.Ed.2d 513 (1972).

Numerous cases from this district have followed *Szukhent* and *Zapata* to enforce contractual provisions appointing an agent for service of process and consenting to venue and jurisdiction in New York. *See*

*Leasing Service Corp. v. Beller,* No. 84 Civ. 1239, slip op. (Jan. 11, 1985); *Credit Alliance Corp. v. National Crane Rental, Inc.,* No. 83 Civ. 7752, slip op. (May 17, 1984) [Available on WESTLAW, 1984 WL 3285]; *Credit Alliance Corp. v. Cassady,* No. 80 Civ. 3280, slip op. (Jan. 13, 1981); *Credit Alliance Corp. v. B & P Excavating, Inc.,* No. 80 Civ. 2649, slip op. (Feb. 27, 1981); *Leasing Service Corp. v. Energy Construction Co.,* No. 80 Civ. 2653, slip op. (Dec. 3, 1980) [Available on WESTLAW, 1980 WL 2046]; *Leasing Service Corp. v. Energy Construction Corp.,* No. 79 Civ. 4193, slip op. (Mar. 21, 1980) (endorsement); *Leasing Service Corp. v. Mullins,* No. 77 Civ. 5891, slip op. (May 5, 1978) (endorsement). In each of these cases, however, the document that formed the basis of the lawsuit, whether a lease agreement or promissory note or guarantee, contained the forum selection or agent-appointing clause. The policy behind enforcing such clauses in credit sales arrangements is to ensure the availability of credit for small businesses by assuring finance companies that such contracts will be enforced according to their terms. *See Credit Alliance Corp. v. Cassady,* slip op. at n. 1.

The difficulty arises in this case because the underlying documents, the Note and the Security Agreement, do not contain a clause appointing C–A Credit as Cottrell's agent for service of process. Both parties have stated that the Delivery Certificate was executed by Cottrell after the principal agreements were entered into; therefore, it cannot be said that consent to venue and jurisdiction in New York was part of the original bargain between Walker and Cottrell. At oral argument, CAC's counsel conceded this problem and stated that ordinarily such clauses would be in the principal agreements. However, CAC attempts to remedy that problem by offering the Delivery Certificate as an indication of Cottrell's willingness to accede to an undertaking that normally would have been in the Note or Security Agreement. Cottrell responds that to include such a clause in a document that by its title purports only to be an acknowledgment of delivery of machinery is so misleading as to be unconscionable.

CAC urges that the rule laid down in *Szukhent* should be extended to include ancillary documents that are not part of the original, underlying transaction and are not readily identifiable as forum selection or agent-appointing agreements. The important policy beneath facilitating credit transactions for small businesses notwithstanding, forum selection clauses and other provisions appointing agents for service of process should be set forth in the principal agreements to a commercial transaction. To enforce such clauses in the Delivery Certificate, undated and only partially executed as it is, "would be unreasonable and unjust." *Zapata,* 407 U.S. at 15, 92 S.Ct. at 1916; *cf. Leasing Service Corp. v. Broetje,* 545 F.Supp. 362, 369 (S.D.N.Y. 1982).

Although the unenforceability of the forum selection and agent-appointing clauses in the Delivery Certificate deprives this court of personal jurisdiction over Cottrell, the court may still in its discretion transfer this case to another district pursuant to 28 U.S.C. § 1404(a). *Corke v. Sameiet M.S. Song of Norway,* 572 F.2d 77, 80 (2d Cir.1978). Accordingly, in the interest of justice, Cottrell's motion to transfer this case to the Southern District of West Virginia is granted.