**Gertrude LANE, Plaintiff,**

**v.**

**VACATION CHARTERS, LTD., d.b.a. The Lodge at Split Rock, Defendant.**

**No. 88 CIV. 8655 (SWK).**

United States District Court, S.D. New York.

Oct. 5, 1990.

Brody, Wolkofsky & Brody, Plainview, N.Y. by Scott A. Brady, for plaintiff.

Chesney, Murphy & Moran, Baldwin, N.Y., by Sarah A. Sabosak, for defendant.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

This is a personal injury action brought under diversity jurisdiction, 28 U.S.C. § 1332. Presently before the Court are plaintiff's motion to strike several of defendant's affirmative defenses and defendant's cross-motion for an order dismissing the complaint under Fed.R.Civ.P. 12(b) for lack of personal jurisdiction and venue, improper or non-service and non-compliance with the statute of limitations, or in the alternative, to transfer under 28 U.S.C. § 1404(a).

### Background

Plaintiff Gertrude Lane, a New York resident, seeks to recover one million dollars in damages from defendant Vacation Charters, Ltd., which is a Pennsylvania corpora-

tion operating a ski resort in that state. Plaintiff alleges that she sustained personal injuries in an accident at the defendant's resort due to, *inter alia,* defendant's negligent maintenance of the facility.

Plaintiff was a member of a group that visited the defendant's resort in February, 1987. This trip was organized by Katherine T. Marshall Polite, of Children's Art Carnival. Neither Ms. Polite nor her organization are parties to this action. The contract between Vacation Charters and Polite confirmed the group's reservation at the resort for the period from February 27, 1987 through March 11, 1987. Group Reservations Contract Form, attached to Plaintiff's Exhibit B ("Contract"). Laura Wren, defendant's sales representative, and Polite are the only signatories to this contract. *Id.*

It is undisputed that Vacation Charters has no license to do business in New York, has no office or permanent agent in New York, and owns no bank account or property in New York. Affidavit of Louis N. DelRosso, Treasurer for Vacation Charters, attached as Defendant's Exhibit A at 8 ("DelRosso Aff."). Plaintiff claims that Vacation Charters has availed itself of jurisdiction in New York through its efforts to solicit business in this state. Plaintiff bases this argument on statements in the affidavit of Vacation Charters' Treasurer, Louis DelRosso, that it engaged in several efforts to solicit business in New York. Defendant admits to placing advertisements in the New York Times, the New York Post, the New York Daily News, and an unspecified number of trade magazines which are distributed in New York and several other states. Defendant's Responses to Jurisdictional Interrogatories, Attached to Notice of Cross Motion as Exhibit D at 4, 5 ("Interrog.") Plaintiff has attached a copy of an advertisement placed in one of these trade magazines. Advertisement Attached to Affidavit of Scott Brody, Attorney for Plaintiff as Exhibit I. Vacation Charters maintains a toll free telephone number available to residents of New York and other states, and sends brochures to New York travel agents upon request. Interrog. at 6, 7. Defendant ad-

mits to paying commissions to these agents when they solicit bookings. Interrog. at 7. Finally, Vacation Charters sent an unspecified number of employees to trade shows in New York in the Spring of 1987 and the Fall of 1988. DelRosso Aff. ¶ 11.

Defendant argues that its solicitation efforts in New York are insufficient to warrant jurisdiction in this state. Vacation Charters contends, and plaintiff does not dispute, that travel agents in New York have no authority to issue confirmed or binding reservations. DelRosso at 13. Defendant further claims that its employees do not travel to New York to meet with travel agents and that no goods or services were solicited at the two trade shows attended by its employees. DelRosso at 9, 11. Defendant also contends that New York addresses constitute comprises only 1% of the circulation of the trade magazine containing the advertisement submitted by the plaintiff. Interrog. at 5.

Defendant further asserts, without rebuttal from the plaintiff, that the Contract between Vacation Charters and Polite was not negotiated in New York. DelRosso Aff. ¶ 15. Defendant contends that Ms. Polite initiated contact with the defendant about arrangements for the trip by phone and travelled to Pennsylvania to negotiate the agreement. DelRosso Aff. ¶ 12, Interrog. at 10(b). Defendants asserts that the contract was then "processed through the mail." DelRosso Aff. ¶ 12. Apart from its advertising and solicitation efforts described earlier, Defendant specifically denies engaging in any business dealings in New York. DelRosso Aff. ¶¶ 6, 10, 17.

Defendant also argues for dismissal of the complaint on the grounds of improper venue, insufficient process and the tolling of the statute of limitations. The Court first considers defendant's personal jurisdiction arguments and finds them meritorious.

### Discussion

■ The question of personal jurisdiction over a non-domiciliary defendant in a diversity action must be resolved by the law of the forum state. *United States v. First*

*National City Bank*, 379 U.S. 378, 381–82, 85 S.Ct. 528, 530–31, 13 L.Ed.2d 365 (1965); *Arrowsmith v. United Press International*, 320 F.2d 219, 223 (2d Cir.1963). Under New York law, the plaintiff bears the initial burden of demonstrating a *prima facie* case of jurisdiction. *Hoffritz for Cutlery Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir.1985); *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981). Although any disputes or ambiguities in the pleadings will be resolved in favor of the plaintiff, the plaintiff must "demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss." *Birmingham Fire Ins. Co. of Pennsylvania v. KOA Fire and Marine Ins., Co., Ltd.*, 572 F.Supp. 962, 964 (S.D.N.Y.1983); *see Hoffritz, supra*, 763 F.2d at 57.

Plaintiff argues that Vacation Charters is subject to jurisdiction in New York under New York CPLR §§ 301 and 302. This Court finds that defendant's in-state activities are not sufficient to satisfy the requirements of either state jurisdictional statute.

New York Civil Practice Law § 301—"Doing Business" Statute

■ New York permits a court to exercise jurisdiction over a foreign corporation under CPLR § 301 if the defendant is engaged in such a "continuous and systematic course of doing business" in the forum that it is subject to suit for any cause of action, even if unrelated to its in-state contacts. *Laufer v. Ostrow*, 55 N.Y.2d 305, 449 N.Y.S.2d 456, 458, 460, 434 N.E.2d 692, 694, 696 (1982); *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 267, 115 N.E. 915 (1917). These activities must amount to a presence with a "fair measure of permanence and continuity," *Tauza, supra*, 220 N.Y. 259, 268, 115 N.E. 915, and they must "make [jurisdiction] reasonable and just according to traditional notions of fair play and substantial justice." *Laufer, supra*, 449 N.Y.S.2d at 458, 434 N.E.2d at 694 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)); *Beacon Enterprises,*

*Inc. v. Menzies*, 715 F.2d 757, 763 (2d Cir. 1983).

■ In making the determination of whether Vacation Charters is "doing business" in this state, the Court is guided by well-established rules. First, in order to base jurisdiction over a foreign corporation on its solicitation of business in the state, there must be a showing that the solicitation is "substantial" and "that it is carried on with a 'considerable measure of continuity and from a permanent locale.'" *Beacon Enterprises, Inc. v. Menzies*, 715 F.2d 757, 763 (2d Cir.1983) (quoting *Stark Carpet Corp. v. M–Geough Robinson, Inc.*, 481 F.Supp. 499, 505 (S.D.N.Y.1980)); *Bryant v. Finnish National Airline*, 15 N.Y.2d 426, 260 N.Y.S.2d 625, 629, 208 N.E.2d 439, 441 (1965). This is referred to as the "solicitation plus" test. *Aquascutum of London, Inc. v. S.S. American Champion*, 426 F.2d 205, 211 (2d Cir.1970).

■ One measure used by New York courts to determine whether a foreign corporation's in-state solicitation is substantial is the amount spent on in-state advertising and the degree of business generated by this advertising. *See Dunn v. Southern Charters, Inc.*, 506 F.Supp. 564 (E.D.N.Y. 1981); *Katz Agency, Inc. v. Evening News*, 514 F.Supp. 423, 427–28 (S.D.N.Y.1981), *aff'd*, 705 F.2d 20 (2d Cir.1983). In the present case, Lane argues that defendant meets this test by "plac[ing] continuous and substantial advertising in three (3) [New York] newspapers ... and intentionally deriv[ing] substantial revenues from soliciting New York residents...." Plaintiff's Reply Memorandum at 3. Lane does not substantiate these allegations, but rather argues that the Court should presume the extent of defendant's advertising by its failure to qualify plaintiff's assertions. Plaintiff's Reply Memorandum at 3. Plaintiff is mistaken as to the placement of the burden of proof, as that burden lies with the plaintiff. In the absence of more detailed evidence on the importance of the New York market for the defendant's resort, plaintiff's bare allegations cannot support a finding of the "substantial solicitation" required. *See Pellegrino v. Strat-*

*ton,* 679 F.Supp. 1164, 1171–72 (N.D.N.Y. 1988) (plaintiff's failure to provide "detailed evidence" of source, nature and degree of investment in in-state advertising fatal to a finding of "substantial" solicitation based on extent of advertising); *see also Ring Sales Co. v. Wakefield Engineering,* 90 A.D.2d 496, 454 N.Y.S.2d 745 (2d Dept.1982) ("vague and generalized allegations" of defendant's in-state contacts insufficient to withstand motion to dismiss or warrant hearing). While defendant responded to plaintiff's interrogatories with admissions of certain contacts, plaintiff did not question defendant on its expenditures on New York advertising or its revenue from the New York market.[1]

■ Even assuming that substantial revenues were generated by defendant's New York advertising, the case law is clear that mere advertising and the solicitation of orders in the state are insufficient to warrant jurisdiction, "no matter what the volume of [in-state] sales concluded." *Laufer, supra,* 449 N.Y.S.2d at 459, 434 N.E.2d at 695; *Delagi v. Volkswagenwerk A.G. of Wolfsburg,* 29 N.Y.2d 426, 328 N.Y. S.2d 653, 657, 278 N.E.2d 895, 897–98 (1972); *Miller v. Surf Properties, Inc.,* 4 N.Y.2d 475, 480, 176 N.Y.S.2d 318, 321, 151 N.E.2d 874, 876 (1958); *Aquascutum of London, Inc. v. S.S. American Champion,* 426 F.2d 205, 211 (2d Cir.1970); *Baird v. Day and Zimmerman,* 390 F.Supp. 883 (S.D.N.Y.1974). In *Aquascutum,* Judge Friendly explained the "plus" component of the doctrine as follows:

> All the cases ... which find personal jurisdiction under the 'solicitation plus' rubric have involved either *some financial or commercial dealings in New York* ... or *defendant holding himself out as operating in New York, either personally or through an agent ....* In addition, where the activities in addition to solicitation have been particularly skimpy, the courts upholding personal

jurisdiction have considered it worthy of comment that the defendant was represented in New York by its own employees rather than by an independent contractor.

426 F.2d at 212 (emphasis added). Thus, essential to a finding of jurisdiction under the "solicitation plus doctrine" is evidence of some business activity conducted within the state by an agent or representative of the defendant. *See Pellegrino, supra,* 679 F.Supp. at 1171; *Rolls Royce Motors, Inc. v. Charles Schmitt & Co.,* 657 F.Supp. 1040, 1045 (S.D.N.Y.1987); *Diskin v. Starck,* 538 F.Supp. 877, 880 (E.D.N.Y. 1982); *Surf Properties, supra,* 176 N.Y. S.2d 318, 321, 151 N.E.2d 874, 876 (1958).

■ Plaintiff makes several unpersuasive arguments for the existence of in-state business dealings by an agent or representative of Vacation Charters. Plaintiff first argues that "... the necessary activity is represented by and manifested in the written contract between the parties." Plaintiff's Memorandum at 4. To the extent that plaintiff is relying on the fact that the contract was signed by Ms. Polite in New York and then returned to defendant by mail, this argument fails. The "last formal act of execution ... is of little, if any jurisdictional significance." *Hoffritz for Cutlery, supra,* 763 F.2d at 60 n. 2; *Galgay v. Bulletin Company, Inc.,* 504 F.2d 1062, 1065–66 (2d Cir.1974). Defendant's unrefuted evidence indicates that Polite initiated contact with the defendant and travelled to Philadelphia for negotiations. The contract was only mailed to her in New York for signature. At no time did defendant's employees travel to New York to conduct business. Moreover, Polite cannot be seen as defendant's agent in this transaction. While Polite may have executed the contract in New York, this does not support the finding that the defendant conducted business in New York. *See Hoffritz for Cutlery, supra,* 763 F.2d at 60.

---

**1.** Furthermore, defendant persuasively rebuts the significance of the only evidence of in-state advertising presented by the plaintiff. Plaintiff presents an advertisement appearing in a trade magazine as evidence of defendant's "purposeful" targeting of advertisement to New York residents. Affidavit of Scott Brody, Attorney for Plaintiff at 5. However, as Defendant asserts, New York addresses constitute only 1% of the total circulation of this magazine. Interrog. at 3.

Furthermore, the Court notes that the authority upon which plaintiff bases this argument, *Sterling Television Presentations, Inc. v. Shintron Co., Inc.,* 454 F.Supp. 183 (S.D.N.Y.1978), is inapposite to the issue at hand. The rule of *Sterling,* that jurisdiction may be based on the existence of a single contract, applies only to jurisdiction under CPLR § 302, and not § 301. Section 302 of New York's Long Arm Statute confers jurisdiction over a defendant with a lower threshold of contacts in the state because that statute also requires that the cause of action arise out of the particular in-state contact. *See Beacon Enterprises, supra,* 715 F.2d at 763.

■ Perhaps the most important factor needed for a finding of jurisdiction under CPLR § 301 is the in-state presence of employees engaged in business activity. *Pellegrino, supra,* 679 F.Supp. at 1171; *Rolls Royce v. Charles Schmitt,* 657 F.Supp. 1040, 1048 (S.D.N.Y.1987). Contrary to plaintiff's assertions however, this test is not met by defendant having sent its employees to two trade shows in the state. Plaintiff's Reply Memorandum at 5. Defendant alleges, and plaintiff does not rebut, that these employees did not provide goods or services at the event. Plaintiff's reliance on defendant's attendance at this trade show is not sufficient to confer jurisdiction. *See Wilcox–Gay Corp. v. Hosho,* 22 Misc.2d 869, 194 N.Y.S.2d 140 (N.Y.City Sup.Ct.1959) (participation in trade shows insufficient for jurisdiction); *Lindner v. Plastic Toys,* 96 N.Y.S.2d 513, 515 (N.Y. City.Ct.1949) (same); *Molina v. Hydraulic Press Mfg. Co.,* 10 Misc.2d 224, 167 N.Y. S.2d 280, 281 (N.Y.Sup.Ct.1956) (same); *McGowan v. Smith,* 52 N.Y.2d 268, 437 N.Y.S.2d 643, 645, 419 N.E.2d 321, 323 (1983) (several visits to forum for marketing research deemed "transitory" and insufficient for finding of "doing business").

■ Moreover, the test of in-state activity would still not be met even if Vacation Charters employees had solicited reservations at these two trade shows because the two occasions cannot be characterized as "continuous or permanent" activity. *See Beacon Enterprises, supra,* 715 F.2d at 763; *Meunier v. Stebo, Inc.,* 38 A.D.2d 590, 328 N.Y.S.2d 608, 611 (3d Dept.1971) ("Continuity of action from a permanent locale essential"); *cf. Laufer, supra,* 449 N.Y.S.2d at 459–60, 434 N.E.2d at 695–96 (jurisdiction exists where there is sustained, systematice sales activity by three representatives in New York); *Pellegrino, supra,* 679 F.Supp. at 1171 (no jurisdiction where defendant advertised and paid in-state travel agents a commission on reservations but where agents lacked authority to issue binding reservations). In *Pellegrino,* plaintiff also brought an action against a foreign corporation in New York for personal injuries sustained at a ski resort in a foreign state. In support of jurisdiction, plaintiff presented evidence that in-state agents were selling lift tickets for defendant's out-of-state resort. The court found that a hearing was necessary to determine the frequency and extent of these sales. By contrast, there is no similar act of in-state sales or other business activity alleged in the instant case. Furthermore, the *Pellegrino* court noted that the plaintiff would probably still have difficulty establishing its burden of proof, even with evidence of in-state sales, because the defendant had no "permanent locale in the state ..." *Id.* at 1171; *Beacon Enterprises, supra,* 715 F.2d at 763. In the case at bar, there is no evidence of in-state sales and no allegation of an in-state permanent locale for the solicitation of business. The presence of defendant's employees at two trade shows does not satisfy this requirement.

The case at bar is also quite unlike the situation presented in the recent case of *Chamberlain v. Peak,* 155 A.D.2d 768, 547 N.Y.S.2d 706 (3d Dept.1989), which similarly involved a plaintiff injured in an accident at an out-of-state ski resort. The *Chamberlain* court ordered a hearing on the issue of jurisdiction over the foreign corporation, where plaintiff alleged that the defendant "consistent[ly] and routine[ly]" sent its employees into New York "to organize and promote ski trips" and that defendant provided "organizational kits" to in-state sales agents which indicated that the defendant would send employees into the

state to discuss its facilities. *Id.* 547 N.Y. S.2d at 707. In the instant case, plaintiff has not alleged any similar in-state visits by defendant's employees. Defendant's participation in two trade shows is not sufficient to show that defendant has provided goods or services in the state with a "fair measure of continuity and permanence."[2] *See Liquid Carriers Corp., v. American Marine Corp.,* 375 F.2d 951, 953 (2d Cir. 1967) (occasional visits by defendant corporation's vice president to forum to solicit business not sufficient for finding of "doing business"); *Rolls Royce, supra,* 657 F.Supp. at 1047 (visits to forum to purchase merchandise insufficient for jurisdiction).

Even in the aggregate, Vacation Charters' contacts with New York are inadequate to confer jurisdiction. In *Katz Agency, Inc. v. Evening News,* 514 F.Supp. 423 (S.D.N.Y.1981), *aff'd,* 705 F.2d 20 (2d Cir. 1983), this Court found that defendant was doing business in the forum because it derived one-third of its revenue from the New York market and had in-state agents who had "significant input" into defendant's operations. *Id.* at 428. These agents had authority to bill customers and collect payments and were regularly visited by defendant's out-of-state managers in meetings described as "play[ing] an important role in the defendant's overall solicitation efforts." *Id.* Even under these facts, the Court stated that *Katz Agency* was a "close case". *Id.* The only instate activities alleged by plaintiff in this case are that defendant advertises in the state and accepts business through independent contractors with no binding authority. There is no evidence of any contact between defendant and these travel agents and no allegation of a permanent locale for solicitation. Even viewed in the light most favorable to plaintiff, these contacts by Vacation Charters cannot be said to approximate the level of business activity present in *Katz Agency,* which by its language suggests a minimum standard.

Plaintiff also argues that defendant has conducted business in the state by paying commissions to in-state travel agents for making reservations. Plaintiff Reply Memo at 3. This argument is unpersuasive. The undisputed evidence shows that the New York travel agents have no authority to issue binding reservations. The reservations made in New York must be confirmed by Vacation Charter's Philadelphia office. It is well established that the instate presence of independent contractors with no authority to make binding reservations is not a sufficient predicate for jurisdiction under this statute. *See Dunn v. Southern Charters, Inc.,* 506 F.Supp. 564, 567 (E.D.N.Y.1981) (solicitation of orders and the sending of brochures to independent contractors insufficient); *Jayne v. Royal Jordanian Airlines Corp.,* 502 F.Supp. 848, 857 (S.D.N.Y.1980) (significant and pivotal factor for finding jurisdiction is authority of in-state reservation agents to accept and confirm reservations); *Welinsky v. Resort of the World, D.N.V.,* 839 F.Supp. 928, 930 (2d Cir.1988) (defendant subject to jurisdiction because of in-state joint venture which had authority to "make and confirm reservations without checking with defendant" and which provided essential services). Similarly, the fact that Vacation Charters has a toll free telephone line available to New York residents does not warrant a finding of "doing business" in the state. *Meunier, supra,* 328 N.Y.S.2d at 611 (maintenance of direct telephone line to out of state corporation insufficient).

▮▮▮ Contrary to plaintiff's position, defendant has not availed itself of jurisdiction in this forum under the applicable "solicitation plus" test. There is no basis for finding that the defendant is "doing business" in the forum sufficient to invoke jurisdiction under CPLR § 301.

**2.** The *Pellegrino* court also rejected plaintiff's argument of defendant's "doing business" by sending employees into New York to purchase a "substantial amount" of ski equipment for its out of state facility. The Court finds that attendance at a trade show is more analogous to this type of business activity which has been repeatedly rejected as a basis for jurisdiction. *See id.* at 1171.

New York Civil Practice § 302—Transacting Business Statute

■ Alternatively, plaintiff seeks to establish jurisdiction under CPLR § 302(a)(1). This section confers jurisdiction over a foreign corporation that "transacts business within the state or contracts anywhere to provide goods and services in the state" if there is a "direct relationship between the cause of action and the instate conduct." *Beacon, supra,* at 764; *Longines–Wittnauer Watch Co. v. Barnes & Reinecke,* 15 N.Y.2d 443, 467, 261 N.Y.S.2d 8, 209 N.E.2d 68, *cert. denied,* 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965). Fatal to plaintiff's reliance on this statute is the absence of a nexus between the in-state activity already discussed and the cause of action.

Plaintiff has brought a cause of action sounding in negligence for an injury which allegedly occurred in Philadelphia. Under these circumstances, it is well established that the required nexus is lacking:

> ... injuries sustained while participating outside the state in recreational activities advertised and contracted for in the state, bear too remote a relationship to the advertising and contractual activity claimed to be the transaction of business in the State to warrant a conclusion that the injuries arose from the in-state activities.

*Diskin, supra,* 538 F.Supp. at 880 (injuries to plaintiff's children at out-of-state summer camp insufficient to warrant jurisdiction in New York); *see Gelfand v. Tanner Motor Tours, Ltd.,* 339 F.2d 317 (2d Cir. 1964) (no jurisdiction where plaintiff was injured in a bus accident out of state even though bus ticket was purchased in New York). As noted in *Gelfand,* a defendant's duty of care does not arise in a state in which it solicits business, but in the state where the injury was sustained. *Id.* at 322. "Even assuming the defendant has performed acts which constitute transaction of business in New York, plaintiffs have failed to show that the cause of action *arises from those acts* as required by CPLR § 302." *Wisselman v. Mt. Snow,* 524 F.Supp. 78, 80 (E.D.N.Y.1982) (emphasis in original); *McGowan, supra,* 52 N.Y.2d at 272, 437 N.Y.S.2d 643, 419 N.E.2d 321.

Plaintiff's suit against Vacation Charters falls squarely under a line of cases which deny § 302 jurisdiction over foreign defendant ski resorts that advertise in-state. *See Chamberlain, supra,* 547 N.Y.S.2d at 707 (plaintiff's ski injury "too remote" from defendant's sales and promotional activities in New York); *Wisselman, supra,* 524 F.Supp. 78 (E.D.N.Y.1982) (no § 302 jurisdiction in ski injury case over defendant Vermont corporation which purchased materials in state and advertised and sent agents in state but where reservations were not made in New York).

Similarly, jurisdiction over defendant cannot lie in CPLR § 302(a)(3). This section extends jurisdiction over a non-domiciliary who "commits a tortious act without the state causing injury to persons or property within the state" if the defendant engages in a certain level of business activity in the state. *See Diskin, supra,* 538 F.Supp. at 879. In this case, the alleged injury was not sustained within New York, but in Pennsylvania, the situs of plaintiff's accident. *See Dunn v. Southern Charters,* 506 F.Supp. 564, 568 (E.D.N.Y.1981); *McGowan, supra,* 52 N.Y.2d at 272, 437 N.Y.S.2d 643, 419 N.E.2d 321.

It is beyond peradventure that the defendant cannot be held to New York jurisdiction under any section of CPLR § 302 based on the allegations in plaintiff's complaint.

Motion for Transfer

■ Although this Court finds that there is no personal jurisdiction over the defendant, it may order a transfer where the interests of justice so direct. *See* 28 U.S.C. § 1404; *Goldlawr v. Heiman,* 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962); *Wisselman, supra,* 524 F.Supp. at 80 (recognizing court's power to transfer despite lack of personal jurisdiction but declining to do so because of considerations of convenience); *Diskin, supra,* 538 F.Supp. at 881 (dismissing complaint for no jurisdiction but indicating that transfer would be ordered if plaintiff so desired).

In this case, the Court notes that plaintiff has filed a second action in Pennsylvania to protect the statute of limitations. Reply Affirmation of Scott A. Brody, Attorney for Plaintiff at 7. Under these circumstances, a transfer to the district [3] where the Pennsylvania action is pending for possible consolidation would be the more appropriate disposition of the matter.[4] *See Credit Alliance Corp. v. L.M. Cottrell Construction Co., Inc.*, 674 F.Supp. 3, 5 (S.D.N.Y.1987); *Corke v. Sameiet M.S.*, 572 F.2d 77, 80, n. 11 (2d Cir.1978) (transferring rather than dismissing complaint for lack of personal jurisdiction over defendant) (citing *Volk Corp. v. Art–Pak Clip Art Service*, 432 F.Supp. 1179, 1181 & nn. 4–5 [S.D.N.Y.1977]).

### Conclusion

This Court lacks personal jurisdiction. Defendant's motion to transfer under 28 U.S.C. § 1404(a) to the Eastern District of Pennsylvania is granted. Plaintiff's motion to strike and defendant's motion to dismiss are denied.

SO ORDERED.

---

**3.** Defendant has moved for transfer to Pennsylvania without specifying the particular district. Based on the papers, the Court assumes that the Eastern District is the appropriate venue.

**4.** By this transfer, the Court is not resolving the statute of limitations question.